In the Matter of the Petition of MARGARET HEERY for the Discharge of JAMES MOLONEY, an Infant.

*Commitment, under section 291 of the Penal Code, of a child, not having any home or proper guardianship — notice of the proceedings must be given to the parent, guardian or custodian — when notice not necessary.*

Upon an appeal from an order made on the return to writs of *habeas corpus* and *certiorari* discharging from the custody of the appellants James Moloney, a child four years of age, it appeared that the infant James Moloney was taken before a police justice on a charge which stated, under oath, that the said James Moloney, aged four years, was found by deponent, *not having any home or proper guardianship*, and that the justice found that he was in a state of want and suffering *and destitute of means of support*, the child's mother being dead and the whereabouts of the father being unknown. The commitment did not contain a statement that any notice was given of the proceedings to the parent, guardian or custodian of the child as was required by subdivision 5 of section 291 of the Penal Code.

*Held*, that, as in this case the infant had a custodian, the order discharging the child from custody should be affirmed.

That the language of the section manifestly referred to those waifs who are homeless, having no abiding place and no guardian, and to a permanent and usual condition, and not to that of a child casually in the street without protection.

*People ex rel. Van Riper* v. *New York Catholic Protectory* (106 N. Y., 610) followed.

That if the circumstances of the case were unusual, as if from accident, the child had temporarily strayed away from its home without the fault of the custodian, the statute did not apply, but if it were otherwise and the child had neither parent, guardian or custodian, then it should be protected by a commitment.

That in order to properly ascertain whether the circumstances were usual or unusual, it was provided by the Penal Code that a notice should be given to the parent, guardian or custodian.

That it did not matter how such custody had been obtained; that the parents might be unknown except to the custodian, and such custodian might have accepted the child as a charge, or stolen or found him.

Appeal from an order made at a New York Special Term upon returns to writs of *habeas corpus* and *certiorari*, discharging from the custody of the appellants, the Sisters of the Order of St. Dominick, James Moloney, a child four years of age, which order was entered in the office of the clerk of the city and county of New York on September 26, 1888.

*E. T. Gerry*, for the appellants.

*E. G. Delay*, for the respondent.

BRADY, J.:

The infant, James Moloney, was taken before a police justice on a charge which appears to have been stated under oath as follows: The James Moloney, "now present," aged four years, was found by deponent, *not having any home or proper guardianship*, being in a state of want and suffering *and destitute of means of support*, the child's mother being dead and the whereabouts of the father being unknown. This appears to have been made the subject of inquiry by the justice, who became satisfied that it was true and a commit-ment was issued. That process does not, however, contain a state-ment of any notice given of the proceeding which was required by the Penal Code of 1887 (§ 291). The notice is to be given to the parent, guardian or custodian of the child. It was given to no one. The record shows that the infant was in the custody of a person, and whether the possession was obtained rightfully or wrongfully makes no difference; the design of the statute was to protect homeless children and those in a state of want or suffering from want of proper guardianship, and those also destitute of support. The absence of proper guardianship would be established by proof of abandonment or neglect, resulting from the bad habits of the custodian or parents, and by which the infant was permitted to be in a state of want or suffering. The object of the statute was beneficent, however cen-surable, for the power conferred by it or the omission of comprehen-sive guards against oppression or despotism, if it be subject to any such criticism. The infant, for example, may be found on the street alone, half clad, cold, hungry, either or all, and suffering and with-out any apparent protection. This condition may arise from gross neglect of guardian or custodian or from the culpable negligence of the parents or from accident, the child having temporarily strayed away from its home without fault of its custodian. If taken before a magistrate, which would be a humane act as well as lawful, the inquiry begins, the design of which is to ascertain whether the circumstances are usual or unusual, and to dispose of the charge accordingly. If the circumstances are unusual and the child have a home and custodian, the statute does not apply; but if it be otherwise and the child has neither, then it should be protected by a commitment. In order properly to ascertain whether the circumstances are usual or unusual, a notice is provided for and the provision relating to it is

comprehensive and sweeping. It is to be given to parent, guardian, custodian, and thus embraces all. It does not matter how the custody has been obtained, for it might be the parents are unknown, except to the custodian, who may have accepted the child as a charge, or stolen or found him. It is impossible that, for any period worth consideration, an infant should be absolutely without a custodian, and hence the provision relating to that personage, to which reference has been made. The officer taking the child and making the charge in this proceeding, for example, gives the name of the infant. From whom was the information derived? If from the infant, he could, no doubt, have given the name of the person with whom he lived and who had charge of him or state where he lived. And if given by some other person, the further information could, no doubt, be obtained. There does not appear, therefore, to be any reason why the salutary and, indeed, indispensable element of notice should be disregarded, even if a discretion in relation to its uses were given to the committing magistrate, but it is not. The legislature must have contemplated that great suffering, if not great wrong, might be entailed or done by hasty and improvident arrests under the provisions of the act. The poor are not destitute of great love of their offspring. Indeed, their affection for them is as expressive and impressive as that in other spheres, but they may often, as they unfortunately are, be unable to continuously furnish all the necessary comforts to their children. It is not to meet such temporary emergency that the statute was enacted, but, as suggested, to provide against the culpable neglect of the parents, their demoralization from bad habits, their unfitness for any cause to be allowed to retain their children and permit them to suffer from any form of exposure. The language of the section manifestly refers to those waifs who are homeless, having no abiding place and no guardian, and to a permanent and usual condition, and not to a child casually in the street without protection. (*People ex rel. Van Riper* v. *N. Y. C. Protectory*, 106 N. Y., 609.) It is not necessary, however, to pursue this vein of reasoning. It is enough that the statute required the notice. The information in these proceedings for summary conviction ought to be precise and show a case clearly within the statute; and when an essential ingredient or circumstance is omitted and the defect is not supplied by the evidence, the conviction is bad. (Case,

*supra.*) And, as said by Justice ANDREWS in the case cited, "it is not consistent with the proper security of personal liberty to indulge, in cases of summary convictions, in latitude or liberality of intendment to support the proceedings."

For these reasons the order appealed from should be affirmed. Ordered accordingly.

VAN BRUNT, P. J., and MACOMBER, J., concurred.

Order affirmed.